UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MATTHEW YOUNG,

                    Petitioner,          **DECISION AND ORDER**
        -vs-                             **No. 6:11-CV-6481(MAT)**

HAROLD D. GRAHAM, Superintendent,

                    Respondent.
_____

        Matthew Young ("Young" or "Petitioner"), proceeding <u>pro</u> <u>se</u>,
has filed an application for a writ of habeas corpus pursuant to
28 U.S.C. § 2254, alleging that he is being held in state custody
in violation of his federal constitutional rights. Petitioner's
state custody arises from a judgment of conviction entered on
September 25, 2007 in Wayne County Court of the New York State,
convicting him, after a jury trial, of two counts of Assault in the
First Degree (N.Y. Penal Law ("P.L.") § 120.10(1), (2)), and one
count of Criminal Possession of a Weapon in the Third Degree (P.L.
§ 265.02(1)).

## II.  Factual Background and Procedural History

        The convictions here at issue stem from an incident that
occurred on January 12, 2007, at the Déjà Vu bar in Ontario,
New York, in which Petitioner beat Christopher Crouch ("Crouch")
about the head and shoulders with a pool cue so hard that the stick
snapped into three pieces. One eyewitness described Crouch as
"mangled" and was only able to identify him based on his

-1-

distinctive haircut. T.237.[1] At the center of the dispute was Petitioner's girlfriend, Jennifer Peacock ("Peacock").

Petitioner, accompanied by Peacock, was apprehended shortly after the incident in his van by a police sergeant who had known Petitioner for about ten years. When the sergeant asked him if he had been involved in a fight, Petitioner replied, "'Yeah. I was,' and [Petitioner] said that he was out at the Déjà vu and some guy was kissing his girlfriend." T.400. Petitioner told the sergeant, "I fucked him up." Id. When the officer responded that the fight could not have been too bad, Petitioner said, "no, it was like-I fucked his face up good." Id. On the ride back to the bar, the officers allowed Petitioner to use his cell phone. They overheard Petitioner say, "I beat the fuck out of him. I caught her making out with a guy and I tattooed his ass. It is pretty bad. I am probably going to prison." T.599. Petitioner repeated the "tattooed" remark several times. T.599, 606. Once at the bar, the troopers transferred Petitioner to Deputy Sheriff Baker, to whom Petitioner said, "I am sorry but when I tap you on the shoulder and ask you what the fuck, you tell me, fuck you, you deserve to get tattooed." T.566, 569.

Outside the back of the bar, Investigator Kuntz found a pool of blood, a tooth lying in the blood, and two pieces of a pool cue

---

[1]
Numerals preceded by "T.__" refer to the transcript of Petitioner's trial.

in the snow. A third piece of the cue lay inside the bar. T.420-21, 424. Investigator Kuntz collected the pieces and sent the thickest piece, which appeared to be bloodied, to the laboratory. No fingerprints appeared on any of the pieces. T.432. Later that morning, Investigator Kuntz sent Petitioner's right sneaker to the laboratory for testing. T.439-44. The forensic biologists determined that the pool cue and Petitioner's sneaker bore human blood containing Crouch's DNA. T.571-76, 584-92. To rebut this evidence, the defense called former police officer Robert Dillman who testified that if the cue in this matter were used in the assault, fingerprints would have been left on it. T.619, 631.

The paramedics who treated Crouch's injuries testified that his face was swollen and he was bleeding heavily, his jaw did not move evenly, and his forehead protruded over his eyebrows. T.343-44. Crouch had sustained lacerations under his right eye and on his upper lip as well as a one- to one and-one-half inch circular contusion on his shoulder, which was consistent with a strike from an object. T.347-49.

The craniofacial surgeon, Dr. Girotto, who treated Crouch testified that Crouch had sustained multiple, severe fractures. His right globe was badly damaged, his face was split, and his right cheek bone was no longer attached to the skull base. T.468-80. To a reasonable degree of medical certainty, the injuries were consistent with a "high velocity blunt trauma" caused by multiple

-3-

blows from either a "pool cue, a baseball bat, or something similar". T.485-86, 488. Dr. Chung, the ophthalmologist who treated Crouch, noted that his right eye was lacerated and so deformed that he had lost sight in it. She determined that injuries must have caused by "severe blunt trauma" from an object "such as a pool cue". T.541-46.

Crouch was in a medically induced coma for a week. When he regained consciousness, he was dependent on a respirator and a nasogastric feeding tube. T.406, 413-14. He was discharged after two weeks but his fractured jaw remained wired shut for six weeks. Crouch had lost a front tooth and was going to lose two more. Crouch now has a prosthetic right eye, and no peripheral vision on that side. T.415. At trial, Crouch testified that his upper jaw and teeth were numb and that it hurt to lean on his face because of the metal plates in his cheeks. T.416.

On July 26, 2007, the jury found Petitioner guilty of two counts of first degree assault and one count of third degree weapons possession, as charged in the indictment. T.716-17. On September 25, 2007, the court sentenced Petitioner as a second felony offender to determinate prison terms of twenty-two years, plus five years of post-release supervision on each assault count, and an indeterminate prison term of from three to seven and one-half years on the weapons possession conviction.

-4-

On December 30, 2009, the Appellate Division, Fourth Department, of New York State Supreme Court, unanimously affirmed Petitioner's conviction on direct appeal. People v. Young, 68 A.D.3d 1761 (4th Dept. 2009). The New York Court of Appeals denied leave to appeal. People v. Young, 15 N.Y.3d 780 (2010).

On September 14, 2011, Petitioner filed a pro se motion for a writ of error coram nobis. Petitioner did not challenge his appellate counsel's representation but instead argued that the Appellate Division, in rejecting Petitioner's Fourth Amendment claims, deprived him of a fair appeal and of equal protection of the laws. On November 10, 2011, the Appellate Division summarily denied the motion.

This timely habeas petition followed in which Petitioner raises the following grounds for relief: (1) he was denied a fair appeal and equal protection because the Appellate Division rejected his claim that the police illegally stopped his van; (2) improper expert testimony was admitted in the grand jury; (3) the court's Sandoval[2] ruling was improper; and (4) the evidence was legally insufficient because the prosecution failed to prove that petitioner caused Crouch's injuries with the pool cue. See

---

[2]
    Prior to the start of trial, the trial court conducted a hearing pursuant to People v. Sandoval, 34 N.Y.2d 371 (1974), to determine whether the prosecutor would be permitted to impeach Petitioner's testimony with evidence of his prior criminal convictions and bad acts.

Petition, ¶ 12 (Grounds One through Four) (Dkt. #1). Respondent opposed the petition. Petitioner did not file a traverse.

For the reasons that follow, the request for a writ of habeas corpus is denied, and the petition is dismissed.

## III. Discussion

### A. Denial of a Fair Trial Based Upon the Appellate Division's Ruling that the Police Properly Stopped His Van

Petitioner argues, as he did in his coram nobis application, that the Appellate Division deprived him of a fair appeal and equal protection of the laws when it upheld the suppression court's ruling that the police legally stopped him and that the physical evidence and Petitioner's statements to the police were admissible.

Although Petitioner has couched his claim in terms of a fair trial violation and a denial of equal protection, it essentially raises a Fourth Amendment issue which is barred from habeas review unless the state denied Petitioner a full and fair opportunity to litigate that claim. See Stone v. Powell, 428 U.S. 465, 481-82 (1976); accord Capellan v. Riley, 975 F.2d 67, 70 (2d Cir. 1992). Such is not the case here. Petitioner fully availed himself of New York's corrective procedures for litigating Fourth Amendment claims, presenting them to the trial court at a suppression hearing and again on direct appeal. His mere disagreement with the outcome of the litigation is an insufficient basis for circumventing the doctrine of Stone v. Powell. See Capellan, 975 F.2d at 70; see also

Graham v. Costello, 299 F.3d 129, 134 (2d Cir. 2002) ("[O]nce it is established that a petitioner has had an opportunity to litigate his or her Fourth Amendment claim (whether or not he or she took advantage of the state's procedure), the court's denial of the claim is a conclusive determination that the claim will never present a valid basis for federal habeas relief. . . . [T]he bar to federal habeas review of Fourth Amendment claims is permanent and incurable absent a showing that the state failed to provide a full and fair opportunity to litigate the claim . . . .").

Beyond arguing simply that the Appellate Division's conclusion was incorrect, Petitioner makes no attempt to show that his disagreement with the Appellate Division amounts to an equal protection violation. The Equal Protection Clause requires government actors to treat similarly situated persons alike. City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985). Here, Petitioner apparently proceeds under the "class of one" theory, Village of Willowbrook v. Olech, 528 U.S. 562 (2000), which requires him to show (1) that he has been treated differently from others similarly situated, Demuria v. Hawkes, 328 F.3d 704, 707 (2d Cir. 2003); (2) that the conduct was "irrational and wholly arbitrary"; and (3) that there existed intentional disparate treatment, Giordano v. City of New York, 274 F.3d 740, 751 (2d Cir. 2001). Petitioner has not shown and cannot show any of the elements

required to state a <u>prima</u> <u>facie</u> claim under the Equal Protection Clause.

### B. Improper Consideration of Expert Testimony by the Grand Jury

Petitioner argues, as he did in the Appellate Division, that an investigator improperly testified before the grand jury that one of the pool cue pieces had blood on it. The Appellate Division held in pertinent part that "the testimony concerning blood evidence was not improper because even [l]ay witnesses are competent to identify blood from its appearance[.]" <u>People v. Young</u>, 68 A.D.3d at 1762, 2009 N.Y. Slip Op. 09866, at **2 (internal citation omitted; quotation and quotation marks omitted; alteration in original). Even if there were error, which the Appellate Division did not find to be the case, it was rendered harmless beyond a reasonable doubt by Young's conviction by the petit jury at his trial. <u>See</u> <u>Lopez v.</u> <u>Riley</u>, 865 F.2d 30 (2d Cir. 1989) (holding that "if federal grand jury rights are not cognizable on direct appeal where rendered harmless by a petit jury, similar claims concerning a state grand jury proceedings are <u>a</u> <u>fortiori</u> foreclosed in a collateral attack brought in a federal court") (citation omitted).

### C. Erroneous <u>Sandoval</u> Ruling

Petitioner argues, as he did on direct appeal, that the trial court's <u>Sandoval</u> ruling was erroneous. The Appellate Division held that the claim was unpreserved for appellate review and declined to review it in the interests of justice. <u>People v. Young</u>, 68 A.D.3d

-8-

at 1762,  2009 N.Y. Slip Op. 09866, at **2 (citations omitted).
Respondent argues that the claim is procedurally defaulted pursuant
to the adequate and independent state ground doctrine and is, in
any event, not cognizable on habeas review.

The Court need not resolve the procedural default issue
because, as Respondent correctly notes, the <u>Sandoval</u> claim does not
present a constitutional question amenable to review on federal
habeas because Petitioner did not take the stand and testify at his
trial. <u>See</u> <u>Oakes v. Conway</u>, 10-CV-318, 2011 WL 3236201, at *6
(W.D.N.Y. July 28, 2011) ("Petitioner's claim that the trial
court's <u>Sandoval</u> ruling was improper is not cognizable on federal
habeas review because he did not testify at trial.") (citing, <u>inter
alia</u>, <u>Luce v. United States</u>, 469 U.S. 38, 41-42 (1984) (holding
that trial court's ruling on defendant's <u>in</u> <u>limine</u> motion regarding
the admissibility of his prior convictions was not reviewable where
the defendant did not testify because "a reviewing court cannot
assume that the adverse ruling motivated a defendant's decision not
to testify"); <u>see</u> <u>also</u>, <u>e.g.</u>, <u>Carroll v. Hoke</u>, 695 F. Supp. 1435,
1439-40 (E.D.N.Y. 1988) (holding that Sandoval claim not cognizable
on federal habeas review where petitioner did not testify at
trial), <u>aff'd</u> <u>mem.</u>, 880 F.2d 1318 (2d Cir. 1989).

### D.   Legal Insufficiency of the Evidence

Petitioner claims that his conviction does not comport with
due process because the evidence was legally insufficient. On

-9-

direct appeal, however, Petitioner contended that the verdict was against the weight of the credible evidence and asked the Appellate Division to exercise its statutory authority to review the factual sufficiency of the evidence. Petitioner argued that the prosecution had not proven beyond a reasonable doubt that the pool cue was the instrument used to assault Crouch. The Appellate Division summarily concluded that the verdict was not against the weight of the evidence. People v. Young, 68 A.D.3d at 1762, 2009 N.Y. Slip Op. 09866, at **2 (citations omitted).

Respondent argues that the legal insufficiency claim asserted here is unexhausted because Petitioner presented only a weight-of-the-evidence claim to the Appellate Division, and cited only to state cases employing the weight-of-the-evidence standard and the statutory authority for conducting such a review. E.g., People v. Acosta, 80 N.Y.2d 665, 672 (1993); People v. Bleakley, 69 N.Y.2d 490, 495 (1992); N.Y. Crim. Proc. Law § 470.15(5). The Appellate Division, in turn, cited only a weight-of-the-evidence case in rejecting the issue, People v. Danielson, 9 N.Y.3d 342, 349 (2007). See Cephas v. Ercole, No. 07 Civ. 6048(NRB), 2008 WL 1944837, at *4 n.5 (S.D.N.Y. July 29, 2008) ("A fair reading of his submissions to the Appellate Division does not support this assertion [that he exhausted the claim], as the language used and the legal precedent cited remain grounded in the state law weight-of-evidence theory. . . . Thus, this claim remains unexhausted."). Respondent argues

that Petitioner's legal insufficiency claim must be deemed exhausted but procedurally defaulted because no avenues remain available to Petitioner to exhaust the claim in state court. Because the claim is so clearly without merit, the Court proceeds to address its substance rather than resolve the procedural issues.

The Fourteenth Amendment protects a defendant from conviction in the absence of sufficient evidence to establish guilt beyond a reasonable doubt. E.g., Fiore v. White, 531 U.S. 225, 229 (2001) (citations omitted). The pertinent standard asks "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original).

First degree assault requires proof of an intent to cause serious physical injury "by means of a deadly weapon or a dangerous instrument." N.Y. Penal Law § 120.10(1). A "dangerous instrument" is "any instrument, article, or substance . . . which, under the circumstances in which it is used . . . is readily capable of causing death or other serious physical injury." N.Y. Penal Law § 10.00(13). Petitioner does not argue that a pool cue could not be used as a "dangerous instrument" within the meaning of New York's Penal Law but instead contends that prosecution failed to adduce sufficient proof to establish beyond a reasonable doubt that Petitioner used a pool cue to cause Crouch's injuries.

Although no one witnessed the assault, the circumstantial evidence that petitioner used the cue stick to strike Crouch repeatedly in the face was more than sufficient to sustain the conviction. Indeed, "'[c]ircumstantial evidence can be as compelling as direct evidence and a conviction can rest solely on circumstantial evidence.'" Calderon v. Perez, 10 Civ. 2562, 2011 WL 293709, at *29 (S.D.N.Y. Jan. 28, 2011) (quoting United States v. Glenn, 312 F.3d 58, 70 (2d Cir. 2002); other citations omitted)), report and recommendation adopted, 10 CV. 2562 GBDAJP, 2011 WL 1405029 (S.D.N.Y. Apr. 5, 2011).

The assault occurred outside, near the back of the bar, where Crouch and his girlfriend had been playing pool. T.235, 326, 354, 373-74. The bar patrons found Crouch on the bar patio, near a large pool of his blood. Lying nearby was a pool stick that had been broken into three pieces. T.236, 239, 326, 329, 354, 375, 420-21. Crouch's blood and DNA were found on the pool cue and on Petitioner's sneaker. T.571-76, 584-92. Paramedic Joan Stark noticed a circular contusion on Crouch's shoulder that was consistent with a strike from a blunt, round-ended object, such as a pool cue. T.347-49. Drs. Girotto and Chung testified that Crouch's multiple fractures and other injuries were caused by high velocity blunt trauma, possibly a pool cue or stick. T.485-86, 488, 546. A wood engineering expert testified that the pool stick snapped into three pieces simultaneously while bending. T.521, 529.

Petitioner made several admissions that he had "tattooed"[3] Crouch because Crouch had made advances at his (Petitioner's) girlfriend. T.599, 606. The circumstantial physical evidence, the medical evidence, and Petitioner's inculpatory statements, viewed in the light most favorable to the prosecution and drawing all reasonable inferences in the prosecution's favor, led inexorably to the conclusion that Crouch's injuries were inflicted by Petitioner with the broken and bloodied pool cue found at the scene. See United States v. Sureff, 15 F.3d 225, 228 (2d Cir. 1994) (Defendant's "insufficiency challenge, . . . , focuses on the lack of any direct evidence-such as the seizure of cocaine or testimony of a coconspirator-of cocaine trafficking. However, crimes may be proven entirely by circumstantial evidence. . . . So long as, from inferences reasonably drawn, the jury could fairly have found beyond a reasonable doubt that the defendant engaged in the charged criminal conduct, a conviction based on circumstantial evidence must be sustained."). Indeed, the evidence was patently inconsistent with any claim that Crouch might have fallen and sustained his numerous, severe injuries.

## IV.  Conclusion

For the reasons stated above, the request for a writ of habeas corpus by Matthew Young is denied, and the petition (Dkt. #1) is

---

[3]

In baseball jargon, when someone says, "He tattoed it!", "[t]his means a hitter hit a ball exceptionally hard." Predict Em!, located at http://www.predictem.com/mlb/jargon.php  (last accessed July 9, 2012).

dismissed. As there has not been a substantial showing of the denial of constitutional right, see 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability. The Court further certified, pursuant to 28 U.S.C. § 1915(a), that any appeal from this Decision and Order would not be taken in good faith, and therefore denies leave to appeal in forma pauperis.

**IT IS SO ORDERED.**

S/Michael A. Telesca

_____
        Hon. Michael A. Telesca
        United States District Judge

Dated:    Rochester, New York
          July 9, 2012